Please the court. It's my honor to add to the pretty interesting variety of issues the court has been addressing today. This case, as I know the court knows, involves a enforceability of a non-compete agreement. Before I forget, I would like to save some time for rebuttal, which I estimate will be about three minutes. The non-compete agreement at issue we, of course, argue is enforceable. The way this case came before this court is on a petition for a temporary restraining order. The trial court, sua sponte, declared that the non-compete agreement that plaintiffs sought to have temporarily restrained is unenforceable as a matter of law and effectively granted summary judgment on that issue. And we submit that the trial court erred as a matter of both substance and procedure. I know the court has read the briefs and is familiar. Well, we think it is appealable. It's not a final order. It's in the nature of an injunction. And that's why we think the court has jurisdiction. So we would submit that the court has jurisdiction because it's in the nature of an injunction. And having jurisdiction over the issues, the court can issue a ruling regarding the propriety. I look at the likelihood of success on the merits of enforceability. That's all we can do, isn't it? Certainly I understand that the court might view it that way. We would submit that the court can find the agreement is unenforceable as a matter of law. But you're right, Judge Loken, that issue was not technically presented to the trial court. The trial court went ahead and made that ruling,  The thing that you were trying to enjoin has now happened. So why isn't this moot? Well, yeah, the thing that they were trying to enjoin, they were trying to enjoin enforcement of this agreement, and they got that. And so that's why we think the court has jurisdiction to overturn that ruling and say the enforcement of this non-compete agreement is not enjoined because it is enforceable. Or just the injunction is moot. Dismiss the appeal. Well, we're saying that the judge found the non-compete agreement unenforceable and enjoined its enforcement. And we're asking the court essentially to lift the injunction. You mean you think there's still a live dispute over ongoing enforcement of the non-compete? Yes. Can you explain why you think it's still live even after Gavaris participated in this home tour? Can you explain why you think there's still a live dispute over that? Thanks for helping me. That's right. Because the non-compete agreement has a two-year limit. For two years he's not entitled to compete. He is continuing to work for BATSE and is going to engage in the same competitive activity again next year. And he's currently working for BATSE, still preparing for the next Artisan Home Tour, which is in competition with our home tour. How do we know that? How do we know that? I mean, the home tour that you're trying to enjoin is gone, so why shouldn't we remand it to the district court to take this up again and decide the issues that you have? Dismiss the appeal and send it back to the district court. Because I'm sure the district judge would say, I already found that the non-compete agreement is unenforceable as a matter of law. So you would, at a minimum, you would have to vacate that order, and I would urge the court. Then you could bring it back up and we could tell you whether we thought he was right or not. But as of right now, the non-compete agreement has been held unenforceable, and its enforcement is permanently enjoined. And so we have no avenue to bring the issue before the court. You want us to set that holding aside? Yes. Is that what you're saying? Yes. So get a 1292B certification. I mean, there are all different kinds of ways to get an interlocutory appeal, but the courts have to agree with it. Well, we think that we have jurisdiction over an appeal, over an order that's in the nature of granting an injunction, which is what this is. Not the entire order, the injunction. Fair enough. The TRO that he sought. The permanent injunction that she gave is what she did. And I think you have jurisdiction to set that aside. And the reason you would set it aside is because you disagree, and this is back to Judge Locum's point, you disagree on the likelihood of success that this thing is unenforceable. Now, on the merits of that, I'd like to hear what you say about this blue-pencil doctrine in Minnesota, because the Minnesota courts do seem to say that a trial court has discretion to blue-pencil and overbroad non-compete but is not required to do so. But then I've seen cases where they seem to review the refusal to blue-pencil for abuse of discretion, suggesting that there's some limit on the discretion of the judge. What's your take on that? And if you think it's reviewable, why was it an abuse here? I think it is technically reviewed for an abuse of discretion because the judge has discretion whether to apply it. The reason I think the discretion was abused here is the judge was operating under a mistaken understanding of the law. She thought that she did not have the authority to what she called effectively rewrite this agreement, but she does. That's what the blue-pencil doctrine allows a judge to do. And the Wood v. May Washington case that we cited involved that same situation where the trial judge, operating under a mistaken assumption of law, declined to apply the blue-pencil doctrine. But let me hasten to add, in all candor, I don't think that's my best argument. I think because it's an abuse of discretion standard, the better argument to me is this judge mistakenly made two mistakes in connection with the enforceability of the non-compete agreement. The first one was her determination that the enforceability was contingent on the existence of an employment agreement. But if you get beyond that and you say, Gavaris agreed that the employment agreement was a condition subsequent, you still have to deal with the over-breadth of the agreement. And here's my point on the over-breadth. I readily concede that it's very broad language when you say that they're not entitled to compete, no competing activity. The problem is the over-breadth problem is not implicated in this case. This case involves clear, undisputed competition. He's working directly for our competitor, doing exactly what he was doing for us. Isn't that a blue-pencil situation then, where it's over-broad as written, and so you want to narrow it and say, well, at least when you're working for BATSE in a home tour, we're going to enforce it. Isn't that an application of the blue-pencil doctrine? I don't know. I think it's a good esoteric question. I've thought about that. What else could it be? I would say it's not because you can enforce it in the context of this case without modifying it. You don't have to modify the agreement to enforce it in this case. In this case, the agreement states in very clear terms you're not to engage in competing activities. That's what he's doing. Now, in another case where it's not clear and you would have to construe the language broadly in order to apply it, what Minnesota law says in that case, you don't construe it broadly. You construe it narrowly, and that's the application of the rule in Minnesota and in a lot of states that says we don't like non-compete agreements. We construe them strictly and narrowly. So in a case, if you use broad language like we did, in a case where it's not clear that he's competing, then a court shouldn't apply it. Here, he absolutely clearly is in competing activity with the home tour that's in direct competition with ours. That's exactly why they wouldn't hire him. Batsy wouldn't hire him because he had this non-compete agreement, and they said we can't hire you until you get this thing voided. So you think this agreement keeps him from being employed from anybody that competes with your company on any level? What do you think the agreement prohibits this person to do? Not disclosure trade secrets and the things that are inherent in your business. Is that right? Well, it prohibits him from—the language says you agree to not engage in any activities in competition with MMP. I agree that's broad. And that's not too broad in your— No, I think it— You don't have to show damages or any information that might be relevant to what he does or anything like that? Well, he's conceded in his own affidavit that he's working for Batsy, and he's doing the same stuff that he was working that he was doing for us. An automobile mechanic moved from the Chevrolet dealership to the Ford dealership to be an automobile mechanic, and your kind of a thing would have kept him from doing that because he'd be doing the same kind of thing. Probably, but this is much more specific because this isn't—there's obviously lots of mechanics jobs. There's only a relatively small handful of luxury home tours. It's a very discreet market. Well, you're showing a protectable interest in this. Protectable interest? Right. The main thing— You only get to overbroad and unnecessarily restrictive and so forth if there is a protectable interest. There's nothing other than just every employer would like to keep former employees from competing. Right. His role at Greenspring was director of event operations, and he— Tell me, who do I read? Whose affidavit, whose declaration do I read to establish the kind of protectable interest that in the restricted covenant litigation I did many years ago always had to be shown? The flaws affidavit, which I think is on page 190 of the appendix. She talks about what he did, and essentially what he did is on behalf of Greenspring, he developed relationships with these builders, and he knew about the pricing, the marketing plans, the scheduling issues, all the things that they did in terms of directing the role. Is there a history in that, though? Well, she says there is. She says there is, and certainly there's relationships that he built with these builders. Let me ask it a different way. What Minnesota case demonstrates that the flaws affidavit satisfies this requirement? Ecolab is probably the best I can do for that, but I'm not sure it addresses the specific nature of this affidavit. What Ecolab says is if it's clear that the activity is competing activity of the type that the parties intended to prohibit, then it's enforceable. Well, you now have perhaps a suit for damages if your contract, if your agreement is enforceable. But we have no briefing on that. Do we here? You don't have any briefing on that? We wouldn't be in a position to hear a dispute like that. On the damages, correct. Yeah. You're right. So if what you've asked to enjoin is over, so you may have a suit for damages against him for violating his agreement because he's already done it, if you can show that the things that he took with him were a protectable interest that you have, as Judge Loken mentioned. But that's not before us, is it? But I need some court to find this thing enforceable. I don't think it's this court. Well, the judge already said it's not enforceable, the trial court. And I'm appealing to this court the order in which she said so. And I think you have jurisdiction to overturn that ruling. Not under interlocutory appeal, do we? Well, she effectively granted an injunction precluding enforcement of this. You absolutely have jurisdiction to overturn that grant of the injunction. I'll save the rest of my time for rebuttal if I can. Your Honor, it's tech, like T-E-C-H. May it please the court, as I heard you all just discuss, this matter isn't properly before the court. This is not an appeal from a final judgment. It's an appeal from a summary judgment order. My client, Tom Gavaris, still has two claims pending before the district court. That's a claim for back wages as well as a claim under the Minnesota Human Rights Act. I just heard my colleague indicate that he needs someone to overturn this non-compete. He has that remedy, just not right now. Why isn't this in the nature of an injunctive relief? Because you can't enjoin something that's not enforceable to begin with, plain and simple. It's not unenforceable until the court issues an injunction saying it's unenforceable. Well, the district court issued a final order on that issue, on summary judgment, saying... Does that have an injunctive effect? I do not think that it does, no. And the reason I say that is because... So you think that Greenspring can run out and sue all former employees out there other than your client while that order is unreversed? Sure. If they have other non-competes to enforce, yes, they could bring an action against other employees. But I thought the whole point of your action was to prevent Greenspring from enforcing the non-compete against Gavaris because Batsy wouldn't hire him until there was such a court order. And you've accomplished that. So why isn't that in the nature of injunctive relief against enforcement of the non-compete? That is the relief we sought with the district court. However, the judge, Judge Montgomery, denied that TRO request as moot. Well, because she went further than what you asked for. Agreed, and it was the issue... Go ahead. The issue was right before her at that time. A court has the authority to sue a grant summary judgment if the opposing party has had a full opportunity to be heard on the issue. So you're saying if she granted the lesser relief of the TRO, then it would be appealable. But because she went further and declared it unenforceable, there's no jurisdiction. Am I following you? That's correct. That seems counterintuitive, but I'll consider whether it's correct. Sure. And actually, had the court just granted a very brief TRO, I don't think that would have been appealable. Had the court granted an injunction, then that would have been immediately appealable. Correct. 10 days later or put them together. Correct. And the Baker Electric case that is cited by my colleague, that's actually what happened. They're relying on that case to say that was a permanent injunction that they're appealing from. The Baker case actually was an appeal from the issuance of a TRO. However, that TRO did not have a time limit, and therefore it served the same as a temporary injunction, making that... Let's now say that the second home tour, BATC home tour, comes around. While this order is in effect, but before there's a final order entered on your damage and other claims, and so before you think we have jurisdiction to review it, would Greenspring be entitled to damages for that violation during the second year of the covenant, if it's ultimately upheld? Yes. When a court order said it's unenforceable? Yes, when it gets to... Your client can't rely on the court order next year? Your client is subject... You've got to tell your client, if we manage to dodge the bullet on this interlocutory appeal, but if that's ever reversed, you're going to be liable for damages, covenant damages, for the entire two years. Well, right now... That's your advice. My advice is that we have a final order. Actually, it would be confidential, Your Honor, but no. My advice to my client would be that we do have a final order that you can rely on. So you're taking the position, then, that in my hypothetical, there would be no claim for damages even though the covenant is ultimately upheld because the conduct was blessed by an interlocutory order? Sure. No, I would agree there's no claim for damages. Well, that demonstrates the appealability, doesn't it? Right, yes, it absolutely does. But appealability of a final order? No, this order. You're treating this as a final order, but you're telling us we can't review it because it's not. I am treating this as a final order on this particular issue. There are two outstanding claims. But if we remand it to the district court, there's nothing to keep the company, Greenspring, from filing a motion to reconsider the summary judgment order, right? Yes, they've already done that, Your Honor, which was denied by the district court. But if it is remanded, yes, that, frankly, I think… Rule 11 might keep them from filing it since they've already filed one and it's been denied. Right, right. I do think that there is a right to relief to Greenspring. It's just not at this time. And what would that relief be? That relief would be waiting until the proceedings at the district court level are completely over. And that would be then file a suit for damages or amend their pleadings to file a suit for damages for what's already gone down on this case? That's correct, but for the reasons I just said to Judge Loken, I would think we would agree that there's no damages there. You're saying they won't be able to get an appeal of their injunctive claim because they have to wait until the other claims are litigated and the two years will be over, and then they can't get damages because your man was relying on the final order. I think you've just opened the Cohen door for us. Well, going back to that, if we take a step back and talk about the appealability of this order, simply when this case is over, when the other two claims are resolved, that's when the relief comes to Greenspring. There's nothing to enjoin here. If an order is not enforceable, if a non-compete is not enforceable, you can't enjoin it. And because there's no injunction, my client brought the motion for an injunction. It was denied to my client, but I'm not the one appealing. That was the appellant. You sought a declaratory judgment, effectively. Correct, and the district court was right to issue the declaratory judgment at that time. Under the rules, and this is reviewed for an abusive discretion standard. The district court's... Was this before the determination sought in the district court? No, it was not. The district court issued the order sua sponte. No, no, I mean after it was entered. No, no, it was not. You know, it allows an appeal from a judgment. That's correct, and there was no request for certification for an appeal. And the district court's actions at that time are reviewed under an abusive discretion standard. All the judge needs to look at is, are there any questions of fact outstanding? There aren't. The district court looked directly at this contract, at this non-compete, and found that there were no questions of fact, that she could look right at the four corners of this document. She could look right at the four corners of the employment proposal and determine that this non-compete was unenforceable as a matter of law. Why wasn't it an abusive discretion not to narrow it at least to the core, which seems to be what your man is doing, competing directly against the former employer in a niche market on a home tour? Quite simply, with the language of this document, that my client can't compete with anyone that's in competition with Greenspring Media or Minnesota Monthly, he's left to guess what that means. Just because Greenspring is sitting here today- I understand that. I'm saying- That eliminates the guess. Yeah. If Minnesota says, unlike some other states, that a court can narrow the overbroad agreement and make it clear as to what really is forbidden, why wouldn't this activity be the core of what any non-compete could prohibit? Well, first of all, the artisan home tour is a very small piece. I want to make that clear. A very small piece of what my client is actually doing now. It's in the record 75% to 80% at least of what he's doing is not competitive with Greenspring Media. Secondly, again, why does Greenspring Media get to sit here with this agreement that was drafted in 1997 and then say, you know what? I know you signed this in 97. We didn't even have a home tour at that time, but you should understand. It's our intent that it's going to apply to this now. I'm sorry? I thought the tour started within a year. The Midwest Home Luxury Home Tour, Greenspring's tour, started in 2001. The artisan home tour started in 2013. Tom Gavaris was hired in 1997 as a sales and promotion manager. He was hired, and he signed this non-compete four years before any home tour existed. So you're saying the change in corporate ownership and the change in the nature of what the company's business was made it appropriate for the district court to decline the modification? I think that's one of the reasons. I think another reason, actually, the Ecolab case that's cited by my colleague, it says that if there is any question as to the scope of a non-compete, you can look at the intent of the parties. Now, I pose that the non-compete isn't ambiguous, and you shouldn't look at the intent of the parties. In terms of whether this employment agreement is tied to the non-compete and its enforceability, that language is very clear. It says an employment agreement should exist, but it doesn't exist. The ambiguity, if any, in this non-compete would be the language of you can't work for anybody in competition with Greenspring Media. If an adult plaintiff pled, it was an employment agreement. Right, and I still think that that could be an employment agreement and it was breached. I'm sorry, it's a judicial estoppel to what you just argued. If blue penciling is an order, which court would be in a position to direct blue penciling, and how would it get before that court from where we are now? Well, at this point in time, because this appeal isn't proper before the court, it's not appropriate at this time, but ultimately it would be this court that would direct the district court to blue pencil it. However, the district court could then determine in what manner that should be applied. Again, we have to give very serious deference. It would be at that court's discretion. That's correct. I don't think that this court has the authority to tell the district court exactly how to write this agreement, and I don't think it should. Judge Montgomery made it clear that should this matter be remanded, her holding isn't going to change. This is a question of law. Quickly going back to the issue of intent, I just mentioned it.  There can be no intent for my client to be restrained from working for a home tour when that home tour didn't even exist at the time of contracting. Well, this seems to be pretty broad. He can't be employed in competition with Green Spring no matter what he does. I think that's the argument that's being made here. Well, that's correct. I still contend that's sort of like the mechanics moving from one dealership to another maybe. I don't know. No, that's correct, Judge. You all asked what's the legitimate business interest. You don't see that phrase anywhere in appellant's brief. Their arguments are strictly based on contract law, ignoring the fact that Minnesota non-competes have to be strictly construed. That's because you're taking away somebody's ability to work. I don't know what Green Spring Media's legitimate business interest is. It is not in the record. It was never articulated. Do they have a legitimate business interest in keeping anyone from competing with them grand scale? No, that's overbroad. Under this non-compete right now, my client can't go work for, say, for example, for Target, who hosts a show once in a while, even for their employees. That could arguably compete with Minnesota Monthly. Well, that's why it's arguably overbroad. Correct. If the district court was wrong not to try in any way to narrow it to something that's reasonable, then it would go back for the district court to say, here is a reasonable refashioning of the agreement, and then it maybe wouldn't include working for Target, but it might include something more central. Sure. But the district court declined to do that, and the district court didn't rely. The legal question for us is whether that was an abuse of discretion, if we have jurisdiction. Sure. Under an abuse of discretion standard, you're going to have to find that Judge Montgomery relied on an error of law or on a mistake, and she didn't do that. There is nothing to support the statement that she thought she couldn't blue pencil the agreement or that she thought she couldn't rewrite it wholesale. That's not what her order says. Her order says, this thing is overbroad, I don't even want to touch it, and I have the right to do so. With that, I'll wind up, and I ask the court to remember the blue pencil laws and the high standard that this court is under to review. I also ask simply that we remember the basics of restrictive covenants, that they need to be tailored in a way to protect the legitimate business interests of the employer. With that, I ask that you affirm the decision of the district court or dismiss this appeal for lack of jurisdiction. Thank you. Thank you. Mr. Garish, do you have some time? Two minutes, Your Honor. Judge Colleton, you hit the nail on the head, and I think it's responsive to Judge Beam's concern about the hypothetical of working for Target. That would be an example where the overbreadth problem is implicated, and you would construe it narrowly and not enforce it in that context. In this context, she conceded, he conceded, that he's in direct competition. This is exactly the thing that he agreed not to do. Well, what about the fact that it was a different company when he signed up and there was no home tour? Is that a reasonable basis for the district court to say I'm not going to refashion this agreement because it was made in a different context? I don't think so because the language of the document still speaks for itself. He agreed not to engage in competitive activity. At the time he left, he immediately went and worked for a company engaging in competition. At that time, he knew that was the very thing that he was doing. He developed relationships with builders on while an employee of Greenspring, and he's now using it as an employee of Batsy. So the passage of time has no impact. I'm sorry. No, go ahead. Well, the passage of time I don't think has any impact because he is violating the agreement that he agreed to. My opponent, I guess it's clever, she's trying to keep me from having any opportunity to get this order reversed. The context of the company, it would seem to me, at the time that he signed this restrictive covenant that he couldn't work for anybody else in the world apparently that was in competition in any way with your company that came along later, would have to be considered. There wasn't a home show. I guess I had missed that in the briefing until four years after he signed this that you're now trying to protect. But I would submit that the contract language speaks for itself. He can't compete. So that is what he's doing. The mere fact that the nature of exactly what he's doing changed over time doesn't alter his agreement not to compete with Greenspring. So no matter if he's sweeping the floors at your company and he signs on to sweep the floors someplace else, that's a violation of your non-compete. Is that what you're saying to me? Probably not because that probably would implicate Judge Loken's concern that there's not any business interest that's being protected in that context. But here there is a business interest. The relationships that he developed in this very different position than sweeping floors, which he's now using against us in his new job. I see my time is up. Thank you, Your Honors, for your time. Thank you, Counsel. The case has been well briefed and argued. We take it under advisement.